IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03178-LTB-KLM

DIANNA K. O'BRIEN,

    Plaintiff,

v.

COSTCO WHOLESALE CORP.,

    Defendant.

---

## ORDER

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Strike Plaintiff's Expert Witness Anne Stodola** [#55][1] (the "Motion").   Plaintiff filed a Response [#60] in opposition to the Motion [#55], and Defendant filed a Reply [#64].  The Court has reviewed the Motion [#55], the Response [#60], the Reply [#64], the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#55] is **GRANTED in part and DENIED in part**.

### I.  Background

This matter arises out of a trip-and-fall incident on August 31, 2017, which occurred on a Costco retail store premises maintained by Defendant.  *Compl.* [#5] at 2.  In relevant part, Plaintiff asserts that her foot contacted an unseen raised floor mat as she exited the store, causing her to fall.  *Id.*  The fall resulted in Plaintiff breaking both her femur and her

---

[1]  [#55] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout this Order.

humerus, for which she required surgery and physical therapy.  *Id.*  Here, Plaintiff brings a premises liability claim against Defendant, alleging that Defendant failed to maintain the store property in a reasonably safe condition by keeping the customer walkway free of a foreseeable tripping hazard.  *Id.* at 3.

Defendant does not dispute that Plaintiff tripped over an anti-fatigue mat at the Costco retail store in question, nor does Defendant dispute the injuries suffered by Plaintiff from the fall.  *Motion* [#55] at 1.  Rather, the disputed issues center around whether placement of the mat was reasonable and who bears responsibility for Plaintiff's trip and fall.  *Id.*  In support of her claim, Plaintiff intends to introduce the expert testimony of Anne Stodola ("Stodola"), a licensed Professional Engineer and expert in human factors and failure analyses.  *Def.'s Ex. 1, Stodola Report* [#55-1] at 1-3.  Ms. Stodola offers the following six opinions:

1) The mat in the walkway created a trip hazard.
2) The placement of the mat at the time of the incident violated the preventative control measures outlined in the Job Hazard Analysis.
3) The employee checking receipts, Mario, moved in front of [Plaintiff] and then to her left, funneling her toward the mat.
4) There was no warning in place to draw [Plaintiff's] attention to the presence of the mat.  Lack of conspicuity of the mat and its elevation change along her path of travel limited [Plaintiff's] ability to detect it.
5) Pedestrians typically do not tilt their heads and look down as they walk on a smooth planar surface.
6) At a minimum, the hazard should have been a contrasting color to attract the pedestrian's attention.

*Id.* at 9.  Defendant moves to strike Ms. Stodola's expert testimony, asserting that her opinions are inadmissible because they "are not based on 'reasoning or methodology which is scientifically valid[ ]' as required under *Daubert* and the Federal Rules of Civil Procedure."  *Motion* [#55] at 2 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993)).  Defendant further asserts that Ms. Stodola's opinions should be stricken

because "they are opinions which an 'average juror is qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject.'"  *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules).   To substantiate its argument, Defendant analogizes Ms. Stodola's opinions in the present action to her opinions in *Henkel v. Albertsons*, a case in which her expert testimony was excluded on another slip-and-fall claim.  *Motion* [#55] at 3-7 (citing *Henkel v. Albertsons, LLC*, No. 14-cv-02217-CMA-MJW, 2015 WL 3637075, at *2-3 (D. Colo. June 11, 2015)).

Conversely, Plaintiff asserts that "the methodology used by Ms. Stodola is appropriate and sound," and that her opinions "will be helpful to a jury."  *Response* [#60] at 3, 8.  Moreover, Plaintiff asserts that Ms. Stodola's testimony in the present action is "substantively different" from her testimony in *Henkel*, thus distinguishing it.  *Id.* at 12.  Plaintiff further notes that *Henkel* is neither binding nor precedential in the present action and urges the Court to evaluate Ms. Stodola's opinions on the merits of materials submitted as part of the current proceedings.  *See id.* at 13.

## II.  Standard of Review

### A.    Fed. R. Evid. 702

Admission at trial of expert testimony is governed by Fed. R. Evid. 702 and requires a two-step analysis.  *103 Investors I, L.P. v Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion."  *Id.* (citation omitted).  "Second, if the expert is sufficiently qualified, the court must determine whether the

opinion is reliable under the principles set forth in *Daubert*."  *Id.* (citing *Daubert*, 509 U.S. at 593-94).

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied."  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

The Tenth Circuit has stated that "[t]he decision to exclude evidence is a drastic sanction."  *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). Ultimately, though, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court.  *Vining v. Enter. Fin. Grp.*, 148 F.3d 1206, 1218 (10th Cir. 1998).  "[T]he rejection of expert testimony is the exception rather than the rule."  *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id*.

### III.  Analysis

The parties do not dispute whether Ms. Stodola is qualified to opine on the issues in this matter.  Rather, Defendant asserts that Ms. Stodola's six opinions are inadmissible

because they are (1) insufficiently based on reliable scientific methodology, and (2) within the common knowledge of laypersons and therefore unhelpful to a jury.  *Motion* [#55] at 3-9.  Conversely, Plaintiff contends that the methodology employed by Ms. Stodola is appropriate and sound, and that her opinions will be helpful to a jury.  *Response* [#60] at 3-12.  The Court first addresses Ms. Stodola's methodology and then the usefulness of her testimony to the trier of fact.

A.    **Methodology**

Citing Rules 702(b) and 702(c), Defendant argues that Ms. Stodola's opinions should be excluded because "they are not based on reasoning or methodology that is scientifically valid, as required under *Daubert*."  *Motion* [#55] at 3 (citing *Daubert*, 509 U.S. 592-93).  Under Rules 702(b) and 702(c), a qualified expert witness may offer her testimony so long as it is "based on sufficient facts or data" and is "the product of reliable principles and methods."  Fed. R. Evid. 702(b), (c).

Although Defendant cites *Daubert* in support of its position, Defendant does not expressly invoke any specific *Daubert* factors to discount Ms. Stodola's methodology. Instead, Defendant relies heavily on the proposition that the Court, having addressed *Daubert* "many times," found that "a party's failure to support expert opinion with sufficient facts and data requires exclusion of the unsupported evidence."  *Motion* [#55] at 4 (citing *James River Ins. Co. v. Rapid Funding, LLC*, No. 07-cv-01146-CMA-BNB, 2009 WL 481688, at *7-8 (D. Colo. Feb. 24 2009)).  Likewise, Defendant cites a two-step inquiry for excluding evidence under Rule 702(c), but fails to meaningfully apply that analysis to the case at hand.  *See id.* (citing *Crabbe*, 556 F. Supp. 2d at 1222-23 ("(i) [W]hat methodology did the witness use to reach the opinion; and (ii) is that methodology

generally deemed 'reliable' in the field in which the expert works.")).  In fact, Defendant's argument is essentially a recitation of *Henkel v. Albertsons*, the case where Ms. Stodola's expert testimony was excluded on a different slip-and-fall claim.  *See* 2015 WL 3637075, at *2-3.  Put differently, Defendant asserts that Ms. Stodola's expert report and the facts of the present action are sufficiently analogous to *Henkel* to warrant exclusion of Ms. Stodola's testimony.

To be sure, the present action and *Henkel* do share some superficial similarities— namely, that a party seeks to offer Ms. Stodola's expert testimony in a slip-and-fall case. Further, the factors set forth in *Daubert* are neither exclusive nor dispositive, and not all *Daubert* factors are applicable to every type of expert testimony.  *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments.  Defendant fails, however, to identify discrete and concrete issues with Ms. Stodola's methodology which cast doubt on either the sufficiency of facts and data referenced in forming her opinions or the reliability of her principles and methods.  *See* Fed. R. Evid. 702(b), (c).  Further, Defendant minimizes the differences between *Henkel* and the present action and fails to rebut Plaintiff's arguments regarding why *Henkel* does not control here.

For one, the activities which resulted in injury in each case are distinct from one another.  In *Henkel*, the plaintiff slipped and fell on a wet floor inside a retail store during a day of inclement weather.  2015 WL 3637075, at *1-2.  Here, Plaintiff tripped and fell while exiting the store after her foot contacted a floor mat.  *Motion* [#55] at 1.  As appropriately identified by Plaintiff, this distinction is important; the facts of the event in question inform the nature—and thus the reliability—of the expert testimony proffered. *See Response* [#60] at 12-13; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

(1999) (finding no single *Daubert* factor dispositive for resolving reliability, as "[t]oo much depends upon the particular circumstances of the particular case at issue").

Defendant's argument regarding why Ms. Stodola's opinions are unreliable takes for granted this important difference. Ms. Stodola's expert report in *Henkel* was six pages long, three-and-a-half of which recited the facts Ms. Stodola relied on in reaching her conclusions. 2015 WL 3637075, at *1. The remainder of Ms. Stodola's *Henkel* report concluded that the defendant's efforts to keep the floor dry during inclement weather were ineffective, and that the defendant should have placed rubber safety mats at all store entrances per the recommendations of an industry safety group. *Id.* The *Henkel* court found Ms. Stodola's brief explanation of her methodology "remarkably circumspect," finding that "[n]owhere in her report [did] [Ms.] Stodola mention any actual analysis being applied." *Id.* at *2-3. The *Henkel* court also took issue with the fact that Ms. Stodola "did no actual testing of the floor's slipperiness," albeit noting that such testing is not always required. *Id.* at *3 (citing *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. App'x 796, 800 (10th Cir. 2009)). In conclusion, the *Henkel* court found "too great an analytical gap" between Ms. Stodola's facts and her proffered opinions, rendering them inadmissible. *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Here, the Court finds that Ms. Stodola's report does not contain the analytical inadequacies present in *Henkel* that made the report unreliable. *See id.*; *see also Response* [#60] at 13 ("Ms. Stodola's report in *Henkel* is, relatively speaking, more cursory and contains less analysis, with fewer reference to the principles underlying that analysis, than that prepared in this case."). Therefore, as further discussed below,

because Ms. Stodola sufficiently explains her methodology in the current action, the Court finds that *Henkel* does not control here.

Defendant correctly points out that Ms. Stodola's current report shares some language with her previously excluded report. *Compare Henkel*, 2015 WL 3637075, at *3 *with Stodola Report* [#55-1] at 6. If that shared language were the extent of Ms. Stodola's methodology, the Court's ultimate conclusion here may have been different. However, Ms. Stodola's report here properly provides additional insight into her methodology in multiple places. *See, e.g.*, *Stodola Report* [#55-1] at 2 ("Failure analysis is an engineering determination of the 'why' and 'how' something happened, such as a fall, [sic] includes understanding environmental, mechanical, and human factors so a jury can appreciate why a danger existed, how it came to be, and whether it could have been remediated."); *id.* at 6 ("Falls involve a loss of balance due to some factor . . . . The events leading to a fall are frequently multifactorial, involving the interaction of conditions. Aspects of the environment involved in falls are the foot-floor interface and the presence of trip hazards."). Moreover, Ms. Stodola's methodology was further elucidated by her Affidavit, *see Stodola Aff.* [#60-3] at 2-3, as well as by a publication titled "Human Factors in Accident Analysis" submitted by Plaintiff, *see generally Pl.'s Ex. 4* [#60-4]. As Plaintiff points out, it is unclear to the Court "what additional methodology Ms. Stodola should have applied." *Response* [#60] at 8.

Next, the Court finds it sufficiently clear what facts and data Ms. Stodola based her report on to reach her conclusions. Defendant, again citing *Henkel*, asserts that Ms. Stodola's opinions are not based on sufficient facts and data because she neither visited nor examined the retail store in question. *Motion* [#55] at 5 (citing 2015 WL 3637075, at

*3 ("[Ms.] Stodola did no actual testing of the floor's slipperiness.")).  Under Rule 702, the sufficiency of an expert's testimony is measured by the quantity of facts supporting the opinions, not the quality of those facts.  *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments (stating that this portion of Rule 702 "calls for a quantitative rather than qualitative analysis").

To produce her report in the present action, Ms. Stodola reviewed six surveillance videos, Plaintiff's Complaint [#5], Defendant's Answer [#9], Defendant's Employee Handbook, the Daily Floor-Walk Logs (August 27, 2017, through September 2, 2017), the Occupational Safety and Health Administration (OHSA) Job Hazard Analysis (August 2019), the Member Injury Protocol, other case documents, and witness statements. *Stodola Report* [#55-1] at 5.  The Court finds this evidentiary foundation to be sufficient given the facts of this case and the nature of the proffered testimony.  Further, although a Rule 702 analysis focuses on the quantity of the facts, the Court considers six surveillance videos and a direct witness statement to be high-quality evidence.  Unlike in *Henkel* where it may have been appropriate for Ms. Stodola to test the slipperiness of the floor, the Court considers it unnecessary for purposes of a Rule 702 motion for Ms. Stodola to have visited and inspected the property in this action.  Given that the mat is moveable and that Ms. Stodola's report was issued nearly three years after the event in question, the Court finds that "there is no reason to believe that the prevailing conditions at the incident site at the time of [Ms. Stodola's] report were similar enough to those at the time of the incident to have any bearing or shed any light on the facts."  *Response* [#60] at 8.  At most, the question of whether Ms. Stodola should have visited and inspected the property is fodder for cross-examination at trial.

Lastly, the Court finds Ms. Stodola's analysis—that is, the application of her methodology to the facts and data—to adequately satisfy Rule 702. Defendant, by relying so heavily on *Henkel*, advances little to no substantive arguments to support the assertion that Ms. Stodola's analysis is unsatisfactory. Insofar as Defendant's arguments do set forth specific concerns about Ms. Stodola's analysis, these arguments are nevertheless almost entirely conclusory. *See, e.g.*, *Motion* [#55] at 6 ("It is difficult to determine from reading either of Ms. Stodola's reports the way in which her 'methodology' and training in 'human factors' and the 'safety heirarcy' [sic] impacted her analysis. Her conclusions are ultimately tenuous applications of these principles at best."). As Plaintiff states, the Court finds that "Ms. Stodola's report sets forth very plainly the principles and standards she applied to her review of the facts, and which in turn yielded her opinions." *Response* [#60] at 5. Ms. Stodola's combined use of text and figures, in both her primary and rebuttal reports, straightforwardly explicate her analysis and the conclusions she reached. *See generally Stodola Report* [#55-1]; *Def.'s Ex. 2, Stodola Rebuttal Report* [#55-2]. Thus, the Court finds that Ms. Stodola's opinions are appropriately "based on sufficient facts or data" as well as "the product of reliable principles and methods" as required by Rule 702. Fed. R. Evid. 702(b), (c).

Accordingly, the Motion [#55] is **denied** to the extent Defendant asserts that any of Ms. Stodola's opinions should be excluded based on methodology under Rule 702.

**B.      Helpful to the Trier of Fact**

Defendant also argues that the subject matter of Ms. Stodola's report is "not appropriate for expert testimony" under Rule 702(a). *Motion* [#55] at 7. Specifically, Defendant asserts that "[e]ach of Ms. Stodola's opinions are well within the understanding

of the lay juror," and that "Plaintiff is merely trying to add gravity and weight to these lay opinions" by conveying them through an expert.  *Id.* at 8-9.  Rule 702(a) states that a qualified expert witness may offer her testimony provided that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); *see also Wilson v. Muckala*, 3030 F.3d 1207, 1219 (10th Cir. 2002) ("When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.") (citation omitted).

Here, the Court finds that some, but not all of Ms. Stodola's opinions are within the knowledge of lay jurors and therefore inadmissible as expert testimony under Rule 702(a). Namely, the Court takes issue with Ms. Stodola's first and third opinions.  Ms. Stodola states in her first opinion that "[t]he mat in the walkway created a trip hazard."  *Stodola Report* [#55-1] at 9.  Whether the subject matter of an opinion is appropriate for expert testimony relies on a "common sense inquiry"—that is, "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules.  As Defendant accurately stresses, the average juror is "capable of evaluating the reasonableness of whether the mat was placed in a manner that presented a tripping hazard to those exiting the store . . . [and] Ms. Stodola does not provide the jury any specialized knowledge to assist this commonsense determination."  *Motion* [#55] at 8.

Thus, the Court finds that Ms. Stodola's first opinion falls squarely within the experiential realm of lay jurors and is accordingly prohibited under Rule 702(a).

Ms. Stodola's third opinion suffers from a similar deficiency.  Ms. Stodola concludes that "[t]he employee checking receipts, Mario, moved in front of [Plaintiff] and then to her left, funneling her toward the mat."  *Stodola Report* [#55-1] at 9.  Insofar as the Court can ascertain, the purpose of this opinion is to address whether Plaintiff's trajectory in exiting the store was reasonable, which in turn informs whether the placement of the mat near the walkway was reasonable. *See Response* [#60] at 9.  The Court is not convinced, as Plaintiff suggests, that "whether the mat is or is not within the path of customers is not something that is necessarily obvious . . . ." *Id.*  Rather, the Court considers unnecessary Ms. Stodola's technical explanation of how Plaintiff's interaction with a Costco employee impacted her route of exit from the store.  *See Stodola Rebuttal Report* [#55-2] at 2-5.  First, the jury will undoubtedly form some conclusions from watching the six surveillance videos viewed by Ms. Stodola.  Moreover, the Court, relying on common sense, assumes that the average juror has previously entered and exited a retail store at some point in time.  Store accessways are crowded or obstructed by other pedestrians and store employees frequently enough for this scenario to be considered commonplace.  Consequently, the Court finds that Ms. Stodola's third conclusion inappropriately opines on subject matter that is within the common knowledge of lay jurors.

In contrast, the Court finds that Ms. Stodola's four remaining opinions could be helpful to average jurors in understanding the evidence or determining a fact in issue. Fed. R. Evid. 702(a).  Plaintiff intends to offer Ms. Stodola's fourth, fifth, and sixth opinions

to help a jury comprehend that "seeing a hazard and perceiving it are not the same thing." *See Response* [#60] at 10.  Ms. Stodola's fourth opinion states: "There was no warning in place to draw [Plaintiff's] attention to the presence of the mat.  Lack of conspicuity of the mat and its elevation change along her path limited [Plaintiff's] ability to detect it." *Stodola Report* [#55-1] at 9.  Ms. Stodola's fifth and sixth opinions respectively aver that "[p]edestrians do not tilt their heads and look down as they walk on a smooth planar surface," and that "[a]t a minimum, the hazard should have been a contrasting color to attract the pedestrian's attention."  *Id.*

These matters, on which it is undisputed that Ms. Stodola is qualified to opine, are not within the understanding of an ordinary juror.   *See* Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules.  Certainly, details such as how attention influences the way one navigates the world, how visual information worsens below certain angles of sight, and how the ability to perceive color is lower in peripheral vision are considerations unknown to the average person.  *See Response* [#60] at 11-12.

Similarly, Ms. Stodola's second opinion seeks to aid a jury in understanding how "design principles and human factors . . . underlie Costco's written standards" and how, if at all, Defendant's placement of the mat in question violated these standards.  *See id.* at 10.  Ms. Stodola's second opinion contends: "The placement of the mat at the time of the incident violated the preventative control measures outlined in the Job Hazard Analysis." *Stodola Report* [#55-1] at 9.  Again, it is undisputed that Ms. Stodola is qualified to testify on this matter, and although the average person routinely interfaces with safety measures, the principles and rationale which underpin such measures are not information

-13-

that a lay juror is presumed to know.[2]  *See* Fed. R. Evid. 702 advisory committee's note to 1972 proposed rules.

The Court is therefore not required to exercise the "drastic sanction" of excluding Plaintiff's remaining expert testimony, *see Summers*, 132 F.3d at 604, and finds that Ms. Stodola's four remaining opinions are admissible under Fed. R. Evid. 702(a).  The Court is confident that the traditional methods of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means for Defendant to challenge Ms. Stodola's remaining opinion testimony.  *O'Sullivan*, 233 F. Supp. 3d at 922.

Accordingly, the Motion [#55] is **granted** to the extent that Ms. Stodola is barred under Rule 702(a) from offering her first and third opinions.  The Motion [#55] is **denied** to the extent that Ms. Stodola is permitted under Rule 702(a) to offer her second, fourth, fifth, and sixth opinions.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#55] is **GRANTED in part and DENIED in part**.  The Motion is **granted** to the extent that Ms. Stodola is barred from offering her first and third opinions.  The Motion is otherwise **denied**.

---

[2]  Plaintiff argues that Ms. Stodola is qualified to opine on "how the apparent discretion given to door employees to move about the entranceway might create conflicts with" Defendant's written standards, and that such testimony would be useful to a jury.  *Response* [#60] at 10. Regardless of whether this opinion satisfies Rule 702, the Court is careful to note that neither of Ms. Stodola's reports contemplate how Defendant may have violated its own safety standards by allowing an employee to freely move about the egress.  Ms. Stodola's only reference to Defendant's written standards, and any alleged violations thereof, relate to the placement of the anti-fatigue floor mat.  *See Stodola Report* [#55-1] at 8.  Accordingly, because Ms. Stodola does not provide this information in her report, it is likely inadmissible at trial.

Dated: March 9, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge